What may be the effect of the deed of William Dickenson to Thomas Cox, and the other original donees, viewing them merely as individuals or natural persons, we are not called on to say. The form of the action, or rather the party plaintiffs, necessarily bring into discussion its validity under the act of 1796, authorizing religious societies to (204) purchase and hold property; for without the aid of that or some other act creating them a corporate or artificial body the present plaintiffs cannot sustain this action, there being no privity or connection between some of the present plaintiffs and the original grantees. By that act religious societies are not made corporate bodies with unlimited and unqualified powers of acquisition, for were that the case it is admitted that the use or trust upon which they held their acquisition would not affect their legal title. If the use or trust was vague or unlawful, it would be a reason why it should result to some other person or for some other purpose, but such modification of the use would not affect the legal ownership; because in this case the trustees having a general and unqualified capacity to acquire property, as individuals or natural persons, the use or trusts upon which such acquisitions were held with such bodies, *Page 123 
as with natural persons, would not affect their estates at law. The act of 1796, however, does not confer a general and unqualified power of acquisition, but only a limited and restricted one, to wit, for the use and benefit of the society. It is therefore the use which gives to the transaction its artificial character by bringing to its aid the act of 1796, if such use is for the religious society. The society (either itself or its trustees, which is immaterial as regards this question) are invested with corporate or artificial qualities, qualities commensurate with the object in view; but if the use or trust is not for themselves as a religious society, but for others, they can derive no aid from the act. They must then rest on their rights as individuals or natural persons, and it would seem to follow as a most necessary consequence, if this use is forbidden by law, if it is contrary to the policy of the State, that the transaction can derive no aid from an act of the Legislature by which the use, and the use only, gives character and validity to the deed. In saying that it is the use which gives character and validity (205) to the deed, I mean not to assume the power of examining into the question whether the use is actually beneficial to the religious society or not; it is sufficient that they as a religious society think it so; of this they are the sole and exclusive judges; but when the question is presented to me, it is my duty to see that such use does not violate the laws or policy of the State, and I think in this case the use offered to be shown on the part of the defendant, from an examination into which the plaintiff shrunk, and which must, therefore (if the testimony is admissible), be taken as true, is forbidden by law, is contrary to the policy and hostile to the best interests of the State. It is contrary to law to permit slaves to hire their own time. The pernicious effect this must produce on our slaves is too obvious to require illustration. Neither is any person permitted to emancipate his slave by his own act; it requires the sanction of the constituted authorities of the State to effect it, and no one, I think, can for a moment doubt the policy of these acts. I must also confess, after a careful examination of the case, that I can discover no difference in effect, so far as regards the evil example to our slaves, between hiring to them their own time and placing them on farms and giving to them what they made after deducting the expenses of supporting them; and no great difference between emancipating them and holding them in the above-mentioned manner until they can be emancipated. It must produce dissatisfaction and a restless spirit among others, the very evils the Legislature designed to *Page 124 
prevent. There can be nothing, I think, in the objection that the uses and purposes for which this society hold these slaves, not being expressed in the deed, averments supported by parol evidence are inconsistent with it, and therefore inadmissible to show what those uses are. In the first place, they are not inconsistent with the deed, the deed being general. But even (206) between the parties to a deed any averments may be made, and of course proof received, to show its nullity. When strangers are concerned — and how this defendant claims does not appear, consequently we must view him as a stranger — such averments are very clearly admissible. The recitals in a deed can bind the parties only, when it is taken as valid; but in endeavoring to show that it is void, its recitals and affirmations may be disproved by any one, either party or stranger; otherwise the parties by false recitals can protect the most unlawful contracts from scrutiny.